UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

CHARLES HAJE,
 individually and on behalf
of all others similarly situated,
        *Plaintiffs,*
v.

        JURY TRIAL DEMANDED

Case No.

WAL-MART STORES, INC.
        *Defendant.*

## CLASS ACTION COMPLAINT

Plaintiffs Charles Haje ("Plaintiff"), through his undersigned attorneys, brings this lawsuit against Wal-Mart Stores, Inc. (hereinafter "Wal-Mart" or "Defendant") as to his own acts upon personal knowledge, and as to all other matters upon information and belief.  In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of Florida consumers specifically defined herein, who purchased either:

  (a)  Wal-Mart "Spring Valley" Gingko Biloba
  (b)  Wal-Mart "Spring Valley" Ginseng

### INTRODUCTION

1.      On February 2, 2015, New York Attorney General Eric T. Schneiderman sent a demand letter to Wal-Mart President and CEO Doug McMillon, ordering Wal-Mart to immediately cease and desist engaging in the sale of adulterated and mislabeled herbal dietary supplements. These products included various Wal-Mart "Spring Valley" supplements, including Wal-Mart "Spring Valley" Gingko Biloba and Wal-Mart "Spring Valley"  Ginseng ("the Misbranded Wal-Mart "Spring Valley" Products") that either could not be verified to

contain the labeled substance, or which were found to contain ingredients not listed on the labels.

2. Attorney General Schneiderman requested that Wal-Mart provide detailed information relating to the production, processing and testing of herbal supplements sold at their stores, as well as set forth a thorough explanation of quality control measures in place.

3. The Attorney General's letter expressly warned Defendant that, "contamination, substitution and falsely labeling herbal products constitute deceptive business practices and, more importantly, present considerable health risks for consumers." (Exhibit 1, Attorney General Letter to Wal-Mart).

4. The letter came as DNA testing, performed as part of an ongoing investigation by the Attorney General's Office, revealed that all of the products purchased by Plaintiffs in this cause were negative for the ingredient listed on the front of the package.

5. An expert in DNA barcoding technology, Dr. James A. Schulte II of Clarkson University in Potsdam, N.Y., was hired by the Attorney General's office to perform the testing.

6. DNA barcodes are short genetic markers in an organism's DNA and are used to identify it as belonging to a particular species. Barcodes provide an unbiased, reproducible method of species identification. Barcodes can be used to determine the exact plant species being tested.

7. All of the Misbranded Wal-Mart "Spring Valley" Products" tested negative for the advertised package contents according to the testing performed. In reality, they contained, among other things, garlic, rice, wheat/grass, and/or dracaena (a tropical houseplant) and *none* of the gingko biloba nor ginseng, they supposedly contained.

8. Plaintiffs relied on Defendant's representations that the Misbranded Wal-Mart "Spring Valley" Products" were what they purported to be: supplements containing gingko biloba and ginseng. Plaintiffs did not purchase Defendant's supplement to ingest garlic, rice, wheat/grass, or a tropical houseplant, among other things, none of which were gingko biloba nor ginseng.

9. Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers. (Exhibit 1)

10. According to Attorney General Schneiderman:

> "this investigation makes one thing abundantly clear: the old adage 'buyer beware' may be especially true for consumers of herbal supplements," "The DNA test results seem to confirm long-standing questions about the herbal supplement industry. Mislabeling, contamination, and false advertising are illegal. They also pose unacceptable risks to New York families—especially those with allergies to hidden ingredients. At the end of the day, American corporations must step up to the plate and ensure that their customers are getting what they pay for, especially when it involves promises of good health."

11. According to Arthur P. Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University**,** "this study undertaken by Attorney General Schneiderman's office is a well-controlled, scientifically-based documentation of the outrageous degree of adulteration in the herbal supplement industry."

12. Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General focused on what appears to be Defendant's practice of substituting contaminants and fillers in the place of authentic product.

13. The testing revealed that all of the retailers were selling a large percentage of supplements for which modern DNA barcode technology could not detect the labeled botanical substance.

14. If the producers of herbal supplements fail to identify all the ingredients on a product's label, a consumer with food allergies, or who is taking medication for an unrelated illness, is taking a potentially serious health risk every time a contaminated herbal supplement is ingested.

15. Plaintiffs did not purchase Defendant's supplements to assume these risks and would not have purchased Defendant's products if they had known they were contaminated and potentially dangerous.

16. The Misbranded Wal-Mart "Spring Valley" Products were and are worthless as a matter of law, failing to contain any of the advertised ingredients. A full return of the purchase price is warranted for the purchase of these supplements.

## PARTIES

17. Plaintiff Charles Haje is a resident of Miramar Beach, Walton County, FL, who purchased Defendant's misbranded and adulterated products in Florida during the four (4) years prior to the filing of this Complaint (the "Class Period"). Specifically, Mr. Haje purchased the following of Defendant's misbranded and adulterated products: Wal-Mart "Spring Valley" Gingko Biloba and Wal-Mart "Spring Valley" Ginseng.

18. Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business at 702 SW 8th Street, Bentonville, Benton County, Arkansas, 72716.

19. Florida law applies to all claims set forth in this Complaint because Plaintiffs live in Florida and purchased Defendant's products here. Also, Defendant sells products in Florida. The misconduct alleged herein was implemented in Florida and has a shared nexus with Florida. The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, Florida. Accordingly, Florida has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiffs and all Class members.

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class;

4

(2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

21. The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

22. The Court has jurisdiction over the Florida claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

23. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

24. The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in Florida, Defendant is authorized to do business in Florida, has sufficient minimum contacts with Florida, and otherwise intentionally avails itself of the markets in Florida through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25. Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

26. Plaintiff Charles Haje regularly purchased Wal-Mart "Spring Valley" Gingko Biloba and Wal-Mart "Spring Valley" Ginseng.

27. In so doing, Plaintiff reasonably relied on the labels of the Misbranded Wal-Mart "Spring Valley" Products. That is, when Plaintiff purchased, for example, Wal-Mart "Spring Valley" Gingko Biloba, he believed he was purchasing a product containing nothing but gingko biloba.

28. In reality, however, recent testing has revealed that Defendant's herbal

5

supplements are not what they purport to be.

29. Specifically, Wal-Mart "Spring Valley" Gingko Biloba contains no gingko biloba, but instead contains oryza (rice) and dracaena (a tropical house plant), among other substances; and Wal-Mart "Spring Valley" Ginseng contains no ginseng, but instead contains dracaena and oryza, among other substances.

30. In other words, while Defendant purports to sell its customers herbal supplements, the supplements are a sham, containing none of the active ingredient promised in the product's name and on the label.

31. The adulterated and misbranded Wal-Mart "Spring Valley" Products are worthless.

32. A reasonable purchaser would believe that Defendant's products did in fact contain the ingredients listed on the labels.

33. A reasonable purchaser would believe that Defendant's Wal-Mart "Spring Valley" Gingko Biloba actually contained gingko biloba.

34. A reasonable purchaser would believe that Defendant's Wal-Mart "Spring Valley" Ginseng actually contained ginseng.

35. Plaintiff reasonably relied on Defendant's package labeling of its Misbranded Wal-Mart "Spring Valley" Products.

36. At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Wal-Mart "Spring Valley" Products were misbranded and adulterated as set forth herein. Plaintiff would not have bought the Misbranded Wal-Mart "Spring Valley" Products had he known the truth that the products contained none of the ingredients listed on the front of package label.

37. As a result of Defendant's misrepresentations of content, Plaintiff and thousands of others in Florida purchased the products at issue.

38. Defendant's labeling as alleged herein is false and misleading and designed to increase sales of the products at issue.

## CLASS ACTION ALLEGATIONS

39. Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

> **Florida Class**: All persons in the state of Florida who, within the last four years, purchased any of the following Wal-Mart "Spring Valley" products:
>
> (a) Wal-Mart "Spring Valley" Gingko Biloba
> (b) Wal-Mart "Spring Valley" Ginseng

40. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

41. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

42. <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands and that joinder of all Class members is impracticable.

43. <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

 a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Wal-Mart "Spring Valley" Products sold to consumers;

 b. Whether the Misbranded Wal-Mart "Spring Valley" Products are worthless;

 c. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

 d. Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

  e. Whether Defendant was unjustly enriched by its deceptive practices.

  44. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Wal-Mart "Spring Valley" Products during the Class Period.  Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of Florida law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

  45. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

  46. <u>Superiority</u>:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be

8

relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

47. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

48. The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

50. For each of the five causes of actions herein alleged *infra*, Plaintiff hereby realleges and incorporates the foregoing paragraphs.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

51. Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

52. Defendant's conduct constitutes unlawful business acts and practices.

53. Defendant sold Misbranded Wal-Mart "Spring Valley" Products in Florida and throughout the United States during the Class Period.

54. Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the reasons discussed above. Defendant has engaged in unfair, false, deceptive, untrue and misleading advertising in violation of Florida Consumer Protection Statute §501 et. seq.

55. The Florida Deceptive and Unfair Trade Practices Act also prohibits any "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Defendant has violated §501.204's prohibition against engaging in unlawful acts and practices by, inter alia, making the false and deceptive representations, and also through their omissions of material facts, as set forth more fully herein and the common law.

56. Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

57. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213 et seq. in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributed to such conduct.

58. As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendant's conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213.

59. There were reasonably available alternatives to further Defendant's legitimate

business interests, other than the conduct described herein.

60. Defendant's claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

61. Defendant's deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiff and the other Class members.

62. Plaintiff and Class members have suffered injury in fact, actual damages, and have lost money as a result of Defendant's unlawful, unfair and fraudulent conduct. Plaintiff's and the Class's damages are a full return of the purchase price paid for the Misbranded Wal-Mart "Spring Valley" Products. Defendant's' deceptively labeled, and falsely advertised, and misbranded product have no market value and are economically worthless.

63. Unless restrained and enjoined, Defendant will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

64. Plaintiff, on behalf of himself, and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from continuing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

## VIOLATION OF FLORIDA INTENTIONAL

## FALSE ADVERTISING STATUTE § 817.44

65. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

66. Defendant knowingly and intentionally engaged in false advertising concerning the true nature of what Defendant's Misbranded Wal-Mart "Spring Valley" Products actually

11

were. Defendant's conduct was consumer-oriented and this conduct had a broad impact on consumers at large.

67. Defendant's actions were unlawful and under the circumstances, Defendant had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

68. Fla. Stat. § 817.44 a defines "false advertising" as "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

69. Defendant intentionally, falsely advertised that Misbranded Wal-Mart "Spring Valley" Products contained the ingredients listed on the label: gingko biloba and ginseng, in Florida and throughout the United States.

70. As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling Misbranded Wal-Mart "Spring Valley" Products to Plaintiff and other members of the Class who purchased this product, Defendant engaged in, and continues to engage in, false advertising in violation of Fla. Stat. § 817.44.

71. Defendant's misleading marketing, advertising, packaging and labeling of Misbranded Wal-Mart "Spring Valley" Products were likely to deceive reasonable consumers.

72. Plaintiff and other members of the Class who purchased Misbranded Wal-Mart "Spring Valley" Products in Florida were deceived.

73. Absent such injunctive relief, Defendant will continue to falsely and illegally advertise Misbranded Wal-Mart "Spring Valley" Products to the detriment of consumers in the state of Florida.

74. As a direct and proximate cause of Defendant's violation of Fla. Stat. § 817.44, Plaintiffs and the members of the Class who purchased Misbranded Wal-Mart "Spring Valley" Products in Florida were injured when they paid money for this illegal and worthless product. As a result of Defendant's unlawful and deceptive business practices, Plaintiff and the members

of the Class who purchased Misbranded Wal-Mart "Spring Valley" Products in Florida, pursuant to Fla. Stat. § 817.44, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiff and the members of the Class who purchased Misbranded Wal-Mart "Spring Valley" Products in Florida any money paid for Misbranded Wal-Mart "Spring Valley" Products.

75.     Plaintiff and the members of the Class are also entitled to attorneys' fees.

## COUNT III

## BREACH OF EXPESS WARRANTY; MERCHANTABILITY;
## USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES

76.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

77.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Defendant's Misbranded Wal-Mart "Spring Valley" Products.  The terms of that contract include the express and implied promises and affirmations of fact made by Defendant on Misbranded Wal-Mart "Spring Valley" Products' packaging and labeling, and through their marketing campaign, as described above. Defendant's Misbranded Wal-Mart "Spring Valley" Products' packaging and advertising constitutes express and implied warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one end, and Defendant on the other.

78.     At all times, and as detailed above, Defendant expressly warranted that Defendant's Misbranded Wal-Mart "Spring Valley" Products were safe, effective and fit for use by consumers and users, including Plaintiff and the Class, for their intended use, that they were of merchantable quality, and that the product actually contains what it purports to contain: ginseng and gingko biloba.

79.     Defendant breached the terms of the contract, including the warranties with Plaintiff and the Class by selling Misbranded Wal-Mart "Spring Valley" Products, with the false

13

representation that the Misbranded Wal-Mart "Spring Valley" Products contained ginseng and gingko biloba.

80. Members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendant, and upon said express warranties in purchasing Misbranded Wal-Mart "Spring Valley" Products.

81. Plaintiff and the Class purchased Defendant's Misbranded Wal-Mart "Spring Valley" Products without knowledge that these products are falsely represented as containing ginseng and gingko biloba.

82. As a direct and proximate result of Defendant's breach of its contract, including the breach of express warranties with respect to Defendant's Misbranded Wal-Mart "Spring Valley" Products, Plaintiff suffered injuries as set forth above, entitling Plaintiff to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for Defendant's Misbranded Wal-Mart "Spring Valley" Products and disgorgement of all profits Defendant gained from sales of Defendant's Misbranded Wal-Mart "Spring Valley" Products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

83. All conditions precedent to Defendant's liability under this contract, including notice, has been performed by Plaintiff and the Class.

## COUNT IV

## BREACH OF IMPLIED WARRANTY PURSUANT TO UNIFORM COMMERICAL CODE §2-314 AND FLORIDA STATUTE §672.314.

84. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

85. The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shell be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

86. Florida has codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2013).

87. Defendant's Misbranded Wal-Mart "Spring Valley" Products are "goods" as defined in the Florida's commercial codes governing the implied warranty of merchantability.

88. As designers, manufacturers, producers, marketers, labelers and sellers of Defendant's Misbranded Wal-Mart "Spring Valley" Products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

89. By placing Defendant's Misbranded Wal-Mart "Spring Valley" Products in the stream of commerce, Defendant impliedly warranted that Defendant's Misbranded Wal-Mart "Spring Valley" Products are reasonably safe and that all claims on their packaging were true, i.e. that the Misbranded Wal-Mart "Spring Valley" Products actually contained either ginseng or ginkgo biloba as stated on the labels of the Misbranded Wal-Mart "Spring Valley" Products.

90. As a merchant, Defendant knew that purchasers relied upon them to design, manufacture, label, and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendant and upon said implied warranties in purchasing Defendant's Misbranded Wal-Mart "Spring Valley" Products.

91. Plaintiff and the Class members purchased Defendant's Misbranded Wal-Mart "Spring Valley" Products for their intended purpose. Defendant's Misbranded Wal-Mart "Spring Valley" Products' defects were not open or obvious to consumers, including Plaintiff and the Class, who could not have known about the true nature of the production of Defendant's product.

92. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and Class members have sustained injuries by purchasing Defendant's Misbranded Wal-Mart "Spring Valley" Products, which were not as represented, thus entitling Plaintiff to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for Defendant's Misbranded Wal-Mart "Spring Valley" Products and disgorgement of all profits from Defendant received from sales of Defendant's Misbranded Wal-Mart "Spring Valley" Products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

## COUNT V

## UNJUST ENRICHMENT

93. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

94. As a result of Defendant's fraudulent and misleading labeling, advertising, marketing, and sales of Defendant's Misbranded Wal-Mart "Spring Valley" Products, Defendant was unjustly enriched at the expense of Plaintiff and the Class.

95. Defendant sold Misbranded Wal-Mart "Spring Valley" Products to Plaintiff and the Class which was a product that was illegally sold, illegally misbranded, and had no economic value.

96. It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class in light of the fact that the products were not what Defendant purported them to be.

97. It would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the Misbranded Wal-Mart "Spring Valley" Products at issue.

98. As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff and the Class hereby demand a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated persons, pray for judgment against Defendant as follows:

A. For an order certifying this case as a Class Action and appointing Plaintiff and his counsel to represent the Class;

B. That the Court adjudge and decree that Defendant has engaged in the conduct alleged herein;

C. That the court award declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D. That the Court order Defendant to engage in a corrective advertising campaign;

E. Awarding Plaintiff and the proposed Class members damages;

F. Awarding restitution and disgorgement to Plaintiff and the other Class members;

G. Awarding Plaintiff and the Classes punitive damages;

H. Awarding Plaintiff treble damages;

I. Awarding attorneys' fees and costs; and

J. Providing such further relief as may be just and proper.

Dated: February 6, 2015

Respectfully submitted

By: /s/ *Dewitt M. Lovelace*_____

Dewitt M. Lovelace
(FL Bar No. 0872326)
Valerie Lauro Nettles
(FL Bar No.0099067)
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone:    (850) 837-6020
Facsimile:    (850) 837-4093
dml@lovelacelaw.com
valerie@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
tasen@cuneolaw.com

Richard R. Barrett
LAW OFFICE OF RICHARD R.
BARRETT, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655
Telephone: 662-380-5018
Fax: 866-430-5459
rrb@rrblawfirm.net

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
donbarrettpa@gmail.com

Kenneth R. Shemin
SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
Telephone:  (479) 250-4764
Facsimile:  (479) 845-2198

Thomas P. Thrash
THRASH LAW FIRM, P.A.

               1101 Garland Street
               Little Rock, AR 72201
               Telephone:  (501) 374-1058
               Facsimile:  (501) 374-2222

               *Attorneys for Plaintiffs*